## PENDENNIS CLUB v. CITY OF LOUISVILLE.

[Abstract Kentucky Law Reporter, Vol. 7—831.]

**Special Finding by Court in Misdemeanor Cases.**

   There is no provision of the statute for special findings in misdemeanor cases when a jury is waived; but since such findings are equivalent to the special verdict provided by Crim. Code, 1876, §§ 257 and 260, the court will so regard them.

**Effect of License to Sell Intoxicating Liquors.**

> A license to sell intoxicating liquors does not preclude the holder thereof from selecting a particular class of persons as those to whom alone he will sell.

**Sale of Liquors by a Club.**

> Where a club room is maintained in which liquors are given to the members, who at the time of receiving them are required to sign a ticket and thereafter to pay the sum named on the ticket, and where visitors are for a time given the privilege of members in receiving liquors by signing tickets which they must redeem at the end of the time limit, it amounts to a sale of such liquors, for which license is required.

### APPEAL FROM JEFFERSON CIRCUIT COURT.

### May 12, 1886.

Opinion by Judge Bowden :

The city charter directs that the general council shall by ordinance provide licenses at the following terms: "For taverns, or hotels, public boarding houses, or places of public resort or entertainment, wherein no malt, fermented, vinous or spirituous liquors are retailed, not less than $10 nor more than $50. For each tavern or hotel, coffee house or club room, or any other establishment wherein malt, fermented, vinous or spirituous liquors are sold by retail in said city, not less than $75 nor more than $1,000."

The ordinance, thus authorized, provides that "Every club house and club room, and every place of resort generally known as such, wherein malt, fermented, vinous or spiritous liquors are sold by retail within the city of Louisville, shall pay a license of $200 per annum. Any person violating any of the provisions of this ordinance shall be fined for each offence not less than $20 nor more than $50."

A warrant was issued against the appellant, charging it with unlawfully keeping a club house in the city, in which such liquors were sold by retail without license. After conviction in the city court, the club appealed to Jefferson Circuit Court, and from its judgment this appeal is taken. On the trial of the case in the circuit court a jury was waived and the case was submitted on the law and facts to the court, which entered the following judgment:

"1st. The court finds that the Pendennis Club did, in the city of Louisville, keep a club house in which wine, whiskey, beer and vinous liquors were furnished to the members, the members receiving the same signing a ticket upon which the value of the liquor received was marked, and that said tickets were taken up and paid by the members so signing the same; that the liquors were so furnished and the tickets so signed taken up and paid within signed tickets upon which the value of the liquor so furnished was marked, and at the time deposited the value in money in a locked box kept by said club; and that such visitor also signed tickets for the liquor and paid said tickets subsequently when the time of their admission into the club was terminated.

"2nd. The court further finds that the furnishing of liquors to members as stated in the finding of facts, and the furnishing of liquors to visitors as stated in the finding of the facts, was in each case in law a selling of liquors by retail, and that the law is for the city of Louisville, and the defendant, the Pendennis Club, is guilty of a violation of the ordinance of the city of Louisville.

"Wherefore it is considered that the Pendennis Club be fined," etc.

There is no provision for special finding in misdemeanor cases when a jury is waived, but as they are the equivalent of the special verdict provided for by Criminal Code 1896, §§ 257 and 260, they may be so regarded. We can not consider the sufficiency of the evidence to support the verdict. *Murphy v. Commonwealth*, 1 Metc. (Ky.) 365. We do not think it necessary to determine whether, in cases like this, we can look into the evidence to see that the findings pronounce affirmatively or negatively on all facts necessary to enable the court to give judgment, as required by § 261. If the findings are read in the light of every fair inference that can be drawn from the evidence, we think they sustain at least one of the legal conclusions.

The charter does not authorize a tax to be laid on a club room as such, but only on club rooms where liquors are sold. It is contended for the appellant that the charter contemplated such club rooms only as are public and offer to sell liquors to all who apply, a construction supposed to be required by the rule noscitur a sociis. But the application of this rule to club rooms, by taking

the tavern as the associate, would assume that a license confers a right on the public to demand admittance and entertainment. A license to sell intoxicating liquors does not preclude the licensee from selecting a particular class of persons as those to whom alone he will sell. No one can maintain that he has the right to buy because the other has the right to sell. If these revenue acts were held to embrace only such vendors as propose to sell to all who will buy it would soon be impossible to find a place where some line of exclusion would not be drawn; and the state and the city would be deprived of all revenue from these sources. Is it therefore our opinion that, if the appellant kept a club room in which the designated liquors were sold, it is not material that it sold only to the select few who came there on personal invitation.

We do not propose to consider or to express any opinion upon the question whether the method whereby members of the club procured their liquors constitutes a sale, or was only a mode of institution among themselves of that which they jointly owned; but we rest our opinion exclusively on the manner in which invited guests procured theirs. If we take the findings alone, the case was this: Persons not members of the club were there as visitors; while there the club furnished them with intoxicating liquors, for which they paid, either at the time or at the expiration of the time for which they had been admitted as visitors. It is difficult to see how a sale could be more distinctly stated. The liquor was furnished to the visitor; he paid for it; no one else is found who had any connection with the furnishing of the liquor.

It is, however, contended here that the real nature of the transaction is not correctly stated in the findings. If it were important, we might stop to consider whether we are authorized to go into the evidence in order to see if it sustains the court's conclusions as to the facts, since in that case the reversal would rest on the ground that the evidence is not sufficient to support the findings that the club sold the liquor to the visitor. But it is not important. The evidence sustains the conclusion, or at least it is such as to place that conclusion clearly beyond the right of an appellate court to challenge it, even if it had been reached in a civil action. The visiting member was held by the club liable for any debt that might accrue on account of the visitor, but the right of the visitor to pay his own bills was specifically recognized. The eighth

# 1106 — Kentucky Opinions. [May,

rule proved that "visitors have the privilege of signing tickets for amounts due the club; if, however, a cash payment is made, a cash ticket must be signed by the party making the payment and placed by him in a box provided for that purpose." If the visitor chose to pay for liquors consumed by him, the club recognized his right to do so; it is true he could, if he desired, insist that, as to all bills created, he was in fact the guest of the inviting member; but the club conceded his right to restrict his relation as guest to the common privilege of the house, and to repudiate that relation in regard to all that he consumed, paying his own bills just as he would at a public restaurant or at a public saloon.

The judgment is *affirmed* with damages.

*Rozel Weissinger, for appellant.*

*T. L. Burnett, for appellee.*

